476 So.2d 481 (1985)
STATE of Louisiana
v.
Johnny Ray HOOKFIN.
No. 85 KA 0032.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
*484 Thomas W. Mull and David R. Paddison, Asst. Dist. Atty., Covington, for appellee.
Jack Hoffstadt, Hammond, for appellant.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Johnny Ray Hookfin was charged by grand jury indictment with two counts of aggravated rape in violation of LSA-R.S. 14:42. The rape victims, a seven year old boy and his five year old brother, are hereinafter designated as Joe and Paul, respectively, in order to protect their identity. Defendant pled not guilty and, following trial by jury, was convicted as charged on each count. The trial court sentenced defendant to a term of life imprisonment without benefit of probation, parole or suspension of sentence on each count, to be served concurrently.
Defendant brings this appeal urging eighteen assignments of error:

*485 1. The trial court erred when it denied defendant the right to introduce into evidence the taped statements of Joe and Paul.
2. The trial court erred in denying defendant's objection to the prosecutor's remarks to defendant and his witnesses that commented on their culture, financial status and morals.
3. The trial court erred in denying defendant's objection to Elizabeth Barker's testifying as to matters beyond her expertise and competency without being qualified as an expert.
4. The trial court erred in continually allowing the prosecutors to ask leading questions of their witnesses without admonishing the prosecutors or declaring a mistrial.
5. The trial court erred in allowing the state to impeach its own witness, Paul.
6. The trial court erred in allowing the children's grandmother to testify as to what Joe and Paul allegedly told her.
7. The trial court erred by allowing testimony as to other crimes that was neither relevant to the case nor was part of the res gestae.
8. The trial court erred in allowing a purported transcript to be given to Elizabeth Barker to enable her to refresh her memory without forcing the state to lay a proper foundation.
9. The trial court erred in not allowing Clarence Hookfin to testify as to observation of the grandmother's actions in controlling the testimony of the children.
10. The trial court erred by not allowing the defendant's nephew, a minor, to have his memory refreshed by a tape recording that had been previously made.
11. The trial court erred in refusing to allow the minor to testify as to statements the alleged victims had made to him.
12. The trial court erred in refusing to allow Gwendolyn Hookfin to testify as to what she was told by the children under an exception to the hearsay rule.
13. The trial court erred in allowing the state to ask questions that are improper because they assumed facts that were not in evidence.
14. The trial court erred in allowing Dr. Rodwig to testify to matters outside of his expertise, training and experience.
15. The trial court erred in not granting a directed verdict at the end of the state's case.
16. The trial court erred in not admonishing the state or declaring a mistrial as a result of the state's closing argument, which was highly prejudicial and misstated the facts.
17. There was error because the verdicts were inconsistent with the evidence.
18. The trial court erred in sentencing defendant to life imprisonment without benefit of parole, probation or suspension of sentence, as such sentences are excessive and, unless applied to the circumstances of the particular case, are unconstitutional.
Assignments of error four, eleven, twelve, thirteen, and fifteen were not briefed and are thereby considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
According to the trial transcript, the victims, their mother, and defendant, resided together during the summer of 1983. In the early fall of 1983, Joe disclosed to his maternal grandmother, that defendant had "stuck his thing in" his and Paul's "butts" one evening during the summer while his mother was at work. In response to that information, the grandmother took Joe to the St. Tammany Parish Sheriff's Office where he was interviewed by Elizabeth Ann Barker, then a detective. As a result of her interview with Joe, during which he related the same account of the incident, Ms. Barker referred Joe to Dr. Francis Rodwig for a physical examination. Dr. Rodwig's examination revealed results consistent with anal intercourse. Joe's rectum was dilated abnormally, and several healed scars appeared around the rectal area. Paul was taken to see Dr. Rodwig the following day and physical findings of that examination were also consistent with anal intercourse with an adult. Based on this *486 information, the instant charges were brought against defendant.
ASSIGNMENT OF ERROR NUMBER 1:
By this assignment, defendant contends that the trial court erred by denying defendant the right to introduce into evidence a taped statement made of Joe and Paul. The taped statement at issue was proffered by defendant. According to the record, the tape was made in defense counsel's office shortly after defendant was released on bond from prison after having been arrested for the instant charges. Present for the taping were defendant; Joe and Paul; the boys' mother; Gwendolyn Hookfin, defendant's sister; Gwendolyn's young son; and defendant's brother, Clarence Hookfin. One can hardly conceive of a more coercive environment for taping the statements of these young rape victims.
In brief, defendant argues that the tape should have been played for the jury because it would have provided a prior consistent statement of Paul's having denied that defendant raped him; it would have impeached the reliability of Joe; and it would have corroborated the defense strategy that the boys were not raped by defendant, but rather injured by a sexual orgy with defendant's young nephew, a seven year old boy.
During the state's case in chief, Paul testified that defendant had done nothing to harm him or his brother Joe. Surprised by Paul's testimony, the state unsuccessfully attempted to impeach him. (See assignment of error number five.) However, Paul would not admit to his earlier statements incriminating defendant, and no extrinsic evidence was offered into evidence for the purpose of impeachment. LSA-R.S. 15:496 permits corroboration by prior consistent statements only after impeachment. State v. Knapper, 458 So.2d 1284 (La.1984). In addition, LSA-R.S. 15:497 provides that such testimony is only admissible when charged to have been given under the influence of "some improper or interested motive, or to be a recent fabrication".
However, the defendant's theory of admissibility fails on at least one of the conditions required by LSA-R.S. 15:496, as the prior taped statement was not made by Paul at an unsuspicious time. The statutory basis for permitting corroboration by a prior consistent statement made at an unsuspicious time is the probable reliability of the statement. State v. Knapper, supra. As noted above, the instant proffered statement has little indicia of reliability.
Defendant's alternative theory of admissibility, allowing introduction of the taped statement as extrinsic evidence to impeach the credibility of Joe, also fails. The right of each party to impeach the testimony and the credibility of his adversary's witnesses has been clearly established. LSA-R.S. 15:486; State v. Redwine, 337 So.2d 1041 (La.1976). LSA-R.S. 15:493 provides the guidelines for admissibility of a prior contradictory statement. Evidence of that statement is not admissible when the witness distinctly admits making the prior statement. It is, however, permissible to elicit the general contents of the prior statement to inform the jury of the nature of the contradiction. State v. Williams, 445 So.2d 1171 (La.1984).
In the instant case, Joe testified during the state's case in chief that he and Paul had both been anally raped by defendant. Under cross examination, Joe admitted that he said defendant did not rape him when the taped statement was made in defense counsel's office. By way of explanation, Joe offered that the taped statement was a lie and he had made that statement only because he was afraid of defendant. Thus the court need not admit into evidence the prior taped statement as the witness admitted making, in substance, that prior inconsistent statement. LSA-R.S. 15:493.
Moreover, the substance of the sexual orgy between the victims and defendant's young nephew was effectively placed before the jury in other ways. Clarence Hookfin testified for the defense as to his discovery of the boys actively engaged in an orgy. Defendant's nephew testified *487 that he told his mother, Gwendolyn Hookfin, that he had been "getting bootie" with Joe and Paul.
Relevancy of evidence is determined by the purpose for which it is offered. LSA-R.S. 15:442. We believe that the trial court properly excluded the taped statement because of the slight probative value attendant from the circumstances surrounding the making of the tape.
Accordingly, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 2:
By means of this assignment, defendant contends that the trial court erred by denying defendant's objections to the prosecutor's remarks to defendant and his witnesses which served as comment on their culture, financial status and morals.
Defendant, in his brief, sets forth numerous instances of alleged impropriety on the part of the prosecutor. However, objections to remarks of a prosecuting attorney must be timely made in order to preserve the error on appeal. State v. Craddock, 435 So.2d 1110 (La.App.1st Cir. 1983). At trial, defendant objected to only two of the prosecutor's remarks complained of herein.
One of the objections followed the prosecutor's inquiry of the victims' mother, during cross examination, as to whether she had ever used marijuana. That objection was sustained by the trial court, and she did not answer the question. The other objection followed an exchange between the prosecutor and defendant during which the prosecutor asked defendant why he was laughing. Defendant replied: "I'm not laughing sir. Don't try to change the outlook of things. We're in an honorable courtroom. Let's remain honorable". Thereafter, the prosecutor commented that "some of us are honorable". Defendant again objected, and this objection was also sustained by the trial court.
If an objection is sustained, as in these two instances, defendant cannot on appeal complain of the alleged error unless at trial he requested and was denied either an admonition to disregard or a mistrial. State v. Michel, 422 So.2d 1115 (La.1982). Defendant herein requested neither an admonition nor a mistrial after his objections were sustained. Hence, he cannot complain on appeal of the alleged errors.
For the first time, in brief to this court, defendant also argues that he was entitled to a mistrial under article 770(1) of the Louisiana Code of Criminal Procedure. Under Louisiana law, a mistrial is mandatory when a prosecutor refers "directly or indirectly" to race or color, where "the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury". LSA-C.Cr.P. art. 770(1). However, in the instant case, the only reference to race or color was made by defendant, himself. First, on direct examination and later on cross examination, defendant volunteered that he had lived with a caucasian woman in Minnesota following his discharge from the military. Defendant provided much detail of his former lifestyle, thereby forcing defense counsel to caution him to limit his answers. This testimony was not chargeable to the state.
Accordingly, this assignment of error is meritless.
ASSIGNMENT OF ERROR NUMBER 3:
By means of this assignment, defendant contends that the trial court erred when it allowed Elizabeth Ann Barker to testify to matters beyond her expertise and competency without being qualified as an expert.
According to the record, Ms. Barker, formerly a detective with the St. Tammany Parish Sheriff's Office, first saw Joe and Paul during the spring of 1983 when their grandmother initiated an investigation of possible child abuse charges against defendant. Ms. Barker was also the detective who interviewed Joe in the early fall of 1983 concerning the instant counts of aggravated rape.
During direct examination, the prosecutor asked Ms. Barker to relate what she *488 personally observed while interviewing the children. Following Ms. Barker's reply that the children were withdrawn, defendant's attorney objected that the witness was giving impermissible opinion testimony. The trial court overruled defense objection, and Ms. Barker then continued her testimony in pertinent part as follows:
Both children were extremely quiet. I had to ask numerous questions in order to establish a rapport or a comfortable environment to where they would speak to me. In early spring, ... They were not willing to talk about anything at that particular time. I was confronted with the same situation in October of '83. They were very quiet....
We find no error in the trial court's allowing the question and answer. LSA-R.S. 15:463 provides the general rule that a witness can testify only as to facts within his knowledge and may not testify as to any impression or opinion that he may have. However, it has been determined that where the subject of the testimony is such that any person of experience may make a natural inference from observed facts, a lay witness may testify as to such inferences provided he also states the observed facts. State v. Adams, 394 So.2d 1204 (La.1981).
In the instant case, Ms. Barker's statements certainly provided an adequate factual basis for her natural inference that the children were withdrawn. Therefore, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 5:
By this assignment, defendant argues that the trial court erred by allowing the state to attempt to impeach the testimony of its own witness, Paul. After being called to the witness stand and having his attention focused on the night in question, Paul testified that defendant had done nothing to harm him or his brother, Joe. Out of the presence of the jury, the prosecutor declared his surprise and sought to attempt to impeach his own witness.
LSA-R.S. 15:487 provides that one may impeach his own witness with prior inconsistent statements if taken by surprise by the testimony of such witness, or if the witness shows hostility toward him. Therefore, either surprise or hostility will permit impeachment by prior inconsistent statements, and both need not be present. State v. Richardson, 459 So.2d 31 (La. App.1st Cir.1984).
In brief, defendant argues that the state could not have been justifiably surprised at Paul's failure to incriminate defendant because defense counsel had given the prosecutor a taped statement the previous day. That tape was made in defense counsel's office some time after defendant's release on bond in the presence of defendant, the victims' mother and several other relatives of defendant. In that proffered tape, Paul denied that defendant had harmed him. However, the prosecutor countered that Paul had on numerous occasions told him of the anal rape by defendant. The prosecutor maintained that Paul had not waivered in his account of the incident and had as late as the previous day given essentially the same version when interviewed.
As we view the facts, they demonstrate that the prosecuting attorney received an unanticipated response when the witness testified that defendant had not raped him. The prosecutor justifiably believed that Paul would testify in accordance with his earlier statements. Having listened to the proffered tape, we agree that it depicts a coercive situation with little indicia of reliability.
Under the circumstances, we believe the trial judge correctly ruled that the prosecution was surprised. See State v. Spotville, 308 So.2d 763 (La.1975). Accordingly, it was not improper for the judge to permit the prosecutor to attempt to impeach the credibility of the witness.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 6:
Defendant contends that the trial court erred in allowing the grandmother to testify as to what the rape victims told her. The statement of which defendant complains *489 is certainly hearsay because it is the out of court, unsworn statement of a third person offered for the truth of its content. State v. Elzie, 351 So.2d 1174 (La.1977).
Cognizant that Louisiana courts have long recognized an exception to the hearsay rule allowing admission of early complaints of rape victims, defendant argues that exception is not available to the state in this instance. At times, the Louisiana Supreme Court has characterized these as the "first complaints of rape victims" constituting res gestae exceptions to the hearsay rule. State v. Middlebrook, 409 So.2d 588 (La.1982). In other cases, the court has referred to such statements simply as "early complaints of rape victims" and ruled they were admissible as such. Id.
The lapse of time between the first opportunity for the victim to make the complaint and the making of the complaint itself seems to be the key factor in deciding whether such statement is admissible. Where the statement is made by the victim at the first opportunity to do so safely, the court has held that such statement is admissible. See State v. Prestridge, 399 So.2d 564 (La.1981).
In State v. Noble, 342 So.2d 170 (La. 1977), two days elapsed between the attack and the statement of the four-year-old victim to her grandmother telling her what happened. The victim had severe injuries and was hysterical at the time of the statement. The Louisiana Supreme Court held that such statement was admissible because the defendant was living with the victim, and her statement to her grandmother was the first opportunity outside the atmosphere of the home for the victim to confide in someone she trusted. Id. at 173.
In the instant case, Joe told his grandmother about the incident perhaps as much as several weeks following the attack. Although the victims' mother testified that her sons never told her of the anal rape, Joe testified that he told his mother within a few days of the attack. The grandmother also related that Joe had said he told his mother of the incident. It is difficult to justify the admissibility of this testimony based solely on its characterization as an early complaint of a rape victim. However, the mother's denial of having been informed of the incident weighs in favor of application of this exception. If she had been told as Joe contends, her passive acceptance of the incident justifies a delay in Joe's further communicating the attack until in a position to confide in someone he could trust. When the grandmother perceived that Joe was disturbed and showed concern, Joe became visibly upset and related the incident. Such a scenario weighs against recent fabrication.
The record reveals the allegedly objectionable testimony of the grandmother followed the trial testimony of Joe and Paul. Defense counsel's only objection during this testimony was to her attempt to testify as to what her daughter, the victims' mother, had said to her when confronted with this information. That objection was properly sustained by the trial court. Since defense counsel did not object to the admissibility of the grandmother's testimony relative to what Joe and Paul told her of the rape, any error may be deemed to be waived. Moreover, even if improperly introduced, it was merely corroborative and cumulative of other properly introduced testimony of Joe and is accordingly harmless error. See State v. Parker, 425 So.2d 683 (La.1982), on rehearing.
For the foregoing reasons, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 7:
By this assignment, defendant contends that the trial court erred by allowing testimony as to other crimes that was neither relevant nor was part of the res gestae.
The record reveals that the mentioning of other crimes and arrests was initiated by defense counsel during cross examination of the grandmother. Defense counsel began his inquiry with the following question: "Calling your attention to the summer of 1983, did you attempt to have charges placed against Johnny [defendant] for child *490 abuse?" Follow-up by defense counsel was directed to attempting to discredit any validity to the abuse charges. This line of questioning was consistent with a general defense strategy which sought to characterize her as a woman who would manufacture unfounded charges against defendant in hope of destroying the relationship between her daughter and defendant.
On re-direct examination, the prosecutor examined the grandmother as to the basis upon which she had concluded that child abuse charges should be brought. Defense counsel's objection to the relevancy of that line of questioning was properly overruled. The evidence introduced by the state did not exceed the permissible scope of re-direct examination in that it was relevant to the issue raised by defendant during cross-examination of the witness.
Because defendant chose to open the door to this line of questioning, presumptively as a deliberately conceived defense strategy, and since the state sought only to refute the evidence initiated by defendant, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 8:
By this assignment, defendant contends that the trial court erred by allowing Elizabeth Ann Barker to refresh her memory without forcing the state to lay a proper foundation.
The record reveals that Ms. Barker was recalled as a witness by the state following the testimony of the victims. During cross examination, defense counsel referred the witness' attention to the testimony she had given during the preliminary examination. Based on her present recollection of that testimony, Ms. Barker maintained that Joe related during their interview that defendant had sodomized him with a broomhandle, a broom straw and his penis. Defense counsel thereafter sought to impeach her testimony by a prior inconsistent statement; i.e., her testimony during the preliminary examination. Given an opportunity to review a transcript of that hearing, Ms. Barker related that she did recall having testified that the victims had been sodomized with a broomhandle and that the victims did not recall exactly having seen any portion of defendant's anatomy.
On re-direct examination, the prosecutor presented defense counsel with a transcription of Ms. Barker's interview with Joe during the early fall of 1983. Defense counsel then objected to the witness being allowed to examine the document because there had been no determination of its authenticity. After ascertaining that the witness had conducted the interview, the trial court overruled defendant's objection. The prosecutor then asked the witness: "You have previously testified that you thought [Joe] told you that Johnny Ray Hookfin stuck a broomhandle up his rectum. Is that the way you remember the testimony?" Ms. Barker replied that was how she remembered Joe's statement. Ms. Barker's attention was directed to the transcribed statement of her interview with Joe, which she was able to identify. In pertinent part, the exchange between Ms. Barker and Joe, during the course of that interview, established that Joe had stated defendant stuck broom straws up his rectum rather than the handle of a broom.
In accordance with LSA-R.S. 15:279, a witness may be allowed to refresh her memory by examining memoranda. It is immaterial by whom or when the memoranda were made, provided that after such inspection, the witness can testify to the fact from her present memory. Contrary to defendant's assertion in brief, it is abundantly clear from the witness' exchange with defense counsel during cross examination that she did not remember Joe's precise statement made during their interview until after examining a transcript of that interview. Thus an adequate foundation was laid for permitting the witness to refresh her memory by reference to the transcribed interview.
Accordingly, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 9:
By this assignment, defendant contends that the trial court erred by not allowing Clarence Hookfin, defendant's brother, to *491 testify as to his observation of the grandmother's actions in controlling the testimony of Joe and Paul. In brief, defendant argues that such testimony should have been allowed pursuant to LSA-R.S. 15:492, which authorizes the impeachment of a witness by showing his bias, interest, or corruption in relation to the instant prosecution.
A defendant has a constitutionally and statutorily protected right to expose through cross-examination facts tending to show that a witness is biased, has an interest in the outcome of the trial, or has been corrupted by the state. LSA-R.S. 15:492; State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dismissed, ___ U.S. ___, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984). However, before such attack can be made by introduction of extrinsic evidence, defendant must lay a proper foundation during cross-examination of the witness sought to be impeached. See State v. Monroe, 397 So.2d 1258 (La.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983). Contrary to defendant's assertion in brief, it was not until the grandmother's testimony on rebuttal, during questioning by the state, that she was asked and denied having attempted to influence Joe's and Paul's statements.
Not only was an improper foundation laid in this attempt to impeach the grandmother by means of extrinsic evidence, but defense counsel's questioning of Clarence Hookfin was also not as described in this assignment. Rather than inquiring about observation of the grandmother's actions in controlling the testimony of Joe and Paul, defense counsel instead asked Clarence Hookfin: "Do you have any personal knowledge of previous instances of the grandmother inaccurately reflecting the facts with regards to an incident with regards to Johnny [defendant]?" The response given indicated that he had no personal knowledge responsive to the question as phrased.
Moreover, despite this ruling by the trial court, defendant did succeed in fully exploring his theory of bias on the part of the grandmother. She was questioned by defense counsel as to the child abuse charges brought against defendant and to kidnapping charges brought by defendant and her daughter, the victims' mother, against her. Gwendolyn Hookfin, defendant's sister, testified that she had heard the grandmother coaching the victims as to their testimony and noted that the grandmother hates defendant. Gwendolyn Hookfin and Willie McKay also testified that they heard the grandmother threaten defendant with further criminal charges after the child abuse charges were dropped. The victims' mother also testified for the defense, noting that her mother had the ability to influence the children. Defendant had a slightly different perspective on the grandmother's motivation as he testified that she was in love with him.
Defendant having failed to demonstrate any error in the contested ruling, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 10:
By means of this assignment, defendant contends that the trial court erred by not allowing defendant's nephew to refresh his memory by listening to the tape made in defense counsel's office.
The record reveals that when this young boy did not testify as hoped, defense counsel sought to have his memory refreshed. After much exchange between defense counsel and the prosecutor, the trial court denied the defense motion. Although the state argued that the tape did not properly fall within the definition of "memoranda" as provided in LSA-R.S. 15:279, there is no indication of record that the trial court grounded its ruling on that basis.
The technique of refreshing memory entails a witness' inspection of memoranda. In his treatise on Louisiana evidence law, Professor George Pugh notes that the majority of jurisdictions follow the traditional view that any memorandum or other object may be used as a stimulus to present memory, without restriction as to authorship. Pugh, Louisiana Evidence Law, 136, n. 52 (Supp.1978).
*492 However, according to the views of various commentators adopted by the Louisiana Supreme Court in State v. Tharp, 284 So.2d 536 (La.1973), certain safeguards should be retained in the process of refreshing recollection. Among those considerations is the safeguard that "the court is required to weigh the value of the memorandum for refreshing memory against the danger of undue and false suggestion, and must deny the use of such an aid if the danger of improper suggestion outweighs the possible value for actually refreshing the witness's memory."
In the instant case, the trial court noted during another ruling (see assignment of error number one) that the tape was colored by very serious questions of the circumstances surrounding its making with very small children. Based on a weighing of the value of the tape, including the coercive circumstances under which it was made, the trial court could properly have denied defendant's request to have this witness listen to the tape.
Thus, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 14:
By means of this assignment, defendant contends that the trial court erred by allowing Dr. Francis Rodwig to testify to matters outside of his expertise, training and experience.
Dr. Rodwig was qualified as an expert in the fields of gynecology and rape examination following the laying of an extensive predicate which included information that Dr. Rodwig had consulted with the coroner's office on juvenile sex crimes since 1955 or 1956. During the state's case in chief, Dr. Rodwig testified to his physical findings upon examining the victims and opined that these findings were not consistent with anal intercourse between the victims and another young boy.
The instant assignment arises out of Dr. Rodwig's testimony in rebuttal. Defense strategy centered on development of a theory that the traumatic injuries manifested by Joe and Paul resulted from a "sexual orgy" involving these victims and two other young boys as the sole participants. The state in rebuttal had the right to offer evidence which would tend to explain, retell, counteract or disprove facts given in evidence by defendant. LSA-R.S. 15:282; State v. Aspin, 449 So.2d 49 (La.App. 1st Cir.1984).
Defendant objected to the following question propounded to Dr. Rodwig by the state: "Doctor, in your expert opinion, is it possible for a group of children say, ages five, six, seven and eight to get together and simultaneously have a group orgy?" However, no grounds for objection were stated for the record. In brief, defendant argues for the first time that Dr. Rodwig's testimony concerning the ability of small children to have orgies was beyond the scope of his expertise. It is well settled that defense counsel must state the basis for his objection when making it and point out the specific error which the trial court is making. LSA-C.Cr.P. art. 841; State v. Williams, 374 So.2d 1215 (La. 1979). An assignment of error reserved to a trial court ruling where there is no basis for the objection stated and no error pointed out presents nothing for review. Id.
Moreover, we find no error in the trial court's having allowed this testimony. The state's question presented a hypothet which assumed facts which defendant hoped to prove by his evidence, and Dr. Rodwig's response stated the facts upon which his opinion was based. See LSA-R.S. 15:465; State v. Cass, 356 So.2d 396 (La.1977). The predicate offered by the state served to qualify Dr. Rodwig as possessing the special training and experience required to offer an expert opinion on this issue. See LSA-R.S. 15:464. Dr. Rodwig had sufficient training in the areas of human physiology and sexual development to assess the possibilities of successful anal intercourse among the participants described. He also had sufficient experience in rape examination to offer an opinion as to the size of an object which might have been inserted in the victims' rectums to produce the traumatic injuries manifested.
*493 Accordingly, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 16:
By this assignment, defendant contends that the trial court erred in not admonishing the jury or declaring a mistrial as a result of the state's closing argument which defendant contends was highly prejudicial. However, the record reveals that only one objection was made to the district attorney's remarks during argument, and the ruling on that objection is not one of the errors argued in brief. The particular remark objected to was a comment by the district attorney on evidence admitted and was clearly not improper. LSA-C.Cr.P. art. 774.
The issue as to the propriety of remarks made in closing argument is not preserved for review where defense counsel makes no objection to the statement either during argument or after the argument. State v. Dufrene, 461 So.2d 1263 (La.App. 1st Cir.1984). In addition, there was no request for an admonition or motion for mistrial. Defendant, therefore, is deemed to have waived any such error on appeal.
Although defense counsel made no objection to any of the statements of the district attorney in his closing argument except the one set forth above, we note that despite lack of objection, extremely inflammatory and prejudicial remarks require reversal. State v. Hayes, 364 So.2d 923 (La.1978). However, we have carefully reviewed the closing argument of the district attorney, and find no extremely inflammatory and prejudicial remark that would require reversal.
Accordingly, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 17:
By this assignment, defendant contends that there was insufficient evidence presented to support the convictions as the verdicts were totally inconsistent with the evidence.
In brief defendant argues that "the most important error" was the state's failure to prove that the crimes were actually committed in St. Tammany Parish. LSA-C.Cr.P. art. 611 provides that all trials shall take place in the parish where the offense has been committed unless a change of venue is obtained. In order for the conviction to stand, venue must be proven during the course of the trial. LSA-C.Cr.P. art. 615; State v. Adams, supra. However, because venue is a special question, the scope of appellate review on that question is limited to determining whether there was some evidence, no matter how little, submitted to the jury to establish venue. Id. To sustain this proof, the Louisiana Supreme Court has concluded that a trial court may take judicial notice of the fact that geographical locations mentioned by witnesses are within a particular parish, even if the parish is never specifically mentioned in the testimony, LSA-R.S. 15:422; Id.
In the instant case, Elizabeth Ann Barker, the investigating officer, was identified as a former deputy of the St. Tammany Parish sheriff's office. The record also reveals that the instant offenses occurred in the home shared by defendant, the victims' mother and the two boys during the summer of 1983. The grandmother testified at trial that the home shared by the victims and defendant during that summer was located in Covington. Joe also testified that he attended school at Covington Elementary School, another factor consistent with his residence in that community. Considering these observations, it appears any rational trier of fact would determine that venue was established by the state at trial.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and made statutory by LSA-C.Cr.P. art. 821. Viewing the evidence in the light most favorable to the prosecution, the *494 court must determine that a rational trier of fact could have concluded that all of the elements of the crime had been proved beyond a reasonable doubt. This is an objective standard for testing the overall evidence, direct and circumstantial for reasonable doubt. State v. Summit, 454 So.2d 1100 (La.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 1411, 84 L.Ed.2d 800 (1985).
In brief defendant argues that the state presented only circumstantial evidence in support of the rape of Paul. To the contrary, Paul's older brother Joe witnessed the incident and testified in detail as to the rape of himself and Paul by defendant. Moreover, the physical findings of the expert, although not conclusive to a certainty, were consistent with anal rape by an adult, and the testimony of the investigating officer and the grandmother corroborated Joe's testimony. Although Joe admitted at trial to a prior inconsistent statement made during the taping at defense counsel's office, the trier of fact might well have given little weight to that information in resolving the issue of Joe's credibility. Even if Joe and Paul did participate in an orgy with defendant's nephew, the trier of fact might well have dismissed that incident as providing an unreasonable basis to explain the trauma manifested by the boys.
The trier of fact may accept or reject in whole or in part the testimony of any witness. State v. Norman, 448 So.2d 246 (La.App. 1st Cir.), reversed in part on other grounds, 452 So.2d 1178 (La.1984). After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant guilty of each count of aggravated rape beyond a reasonable doubt.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 18:
Defendant contends that the trial court erred in imposing the statutorily provided mandatory sentence for conviction of aggravated rapelife imprisonment without benefit of probation, parole or suspension of sentence. Defendant does not argue that the penalty provision for aggravated rape is per se unconstitutionally excessive but, rather, that under certain circumstances it may be excessive.
Relying on Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), defendant urges that the Eighth Amendment's proscription of cruel and unusual punishment forbids the imposition of a sentence that is disproportionate to the crime committed. In State v. Foley, 456 So.2d 979 (La.1984), the Louisiana Supreme Court applied a proportionality analysis to Foley's crime and sentence, and held that Louisiana had not singled out aggravated rape for disproportionate punishment. Therein the court concluded that in light of relevant objective criteria Foley's life sentence, imposed following conviction of aggravated rape, was not prohibited as excessive by either the United States or the Louisiana Constitution.
Unlike Foley, defendant herein does not allege, nor are we aware of, any factor in support of a finding that his sentence is disproportionate to the criminal conduct exhibited in this case nor that it is excessive under the particular circumstances of this case.
Mindful that aggravated rape is a reprehensible offense, the Louisiana Supreme Court has repeatedly held that the mandatory life sentence for aggravated rape is a valid exercise of the state legislature's prerogative to determine the length of sentence for crimes classified as felonies. See State v. Foley, supra, and cases cited therein.
Accordingly, Johnny Ray Hookfin's concurrent life sentences are not prohibited as excessive.
For the foregoing reasons, defendant's convictions and sentences are affirmed.
AFFIRMED.