772 So.2d 181 (2000)
STATE of Louisiana
v.
Michael C. HOFFPAUIR.
No. 99-1927.
Court of Appeal of Louisiana, Third Circuit.
October 11, 2000.
Rick Bryant, District Attorney, Cynthia S. Killingsworth, Assistant District Attorney, Lake Charles, Louisiana, Counsel for Appellee/State of Louisiana.
Paula C. Marx, Louisiana Appellate Project, Lafayette, Louisiana, Counsel for Appellant/Michael C. Hoffpauir.
(Court composed of NED E. DOUCET, Jr., Chief Judge, GLENN B. GREMILLION, and ELIZABETH A. PICKETT, Judges).
DOUCET, Chief Judge.
The Defendant, Michael C. Hoffpauir, along with four co-defendants, was indicted on December 3, 1998, for five counts of aggravated rape, in violation of La.R.S. 14:42, and one count of armed robbery, in violation of La.R.S. 14:64. He pled not guilty. The State severed the defendants and amended the bill of indictment to charge Hoffpauir with one count of aggravated rape. A jury trial was held September 13-15, 1999, resulting in a guilty verdict. The Defendant waived all delays and was immediately sentenced to life in prison without the benefit of probation, parole, or suspension of sentence. A Motion and Order for Appeal was filed September 28, 1999.

ERRORS PATENT:
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. Our review the record reveals one error patent.
The transcript of sentencing is not included in the present record. According *182 to the minutes of sentencing, however, the Defendant was not informed of the two-year prescriptive period for filing post-conviction relief as is required by La.Code Crim.P. art. 930.8. Thus, we order the district court to "inform the [D]efendant of the provisions of Article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the [D]efendant received the notice in the record of the proceedings." State v. Fontenot, 616 So.2d 1353, 1359 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La. 1993).

FACTS:
The Defendant, along with four other men, raped S.V.[1] on September 28, 1998, at the Defendant's home in Calcasieu Parish.

ASSIGNMENT OF ERROR NO. 1:
The Defendant contends that he was denied his constitutional right of confrontation because the trial court allowed a witness to testify to the out-of-court statements made by a co-defendant who did not testify at trial. The Defendant further maintains the trial court erred in admitting the statement because it was hearsay and highly prejudicial.
The Defendant was one of at least four men who raped a young girl at gunpoint. At trial, State's witness, Dewey Miller, testified that one of the men had bragged to him about the rape. Kristopher Justin Shoenig was an indicted co-defendant awaiting trial. Miller said Shoenig told him that he and four other men "gangbanged" S.V. and that he had struck her with a gun.
The trial judge allowed this testimony over the objection of defense counsel. The trial judge ruled that, although the statement was hearsay, it fell within the hearsay exception of statement against interest. The Defendant argues that he was denied his constitutional right to confront the "witness" Shoenig, who in effect, "testified" through Miller. The Defendant states that Shoenig was not under oath and not subject to cross-examination when he made the out-of-court statement to his friend. Thus, the Defendant maintains that the jury was denied the opportunity to observe Shoenig and judge his credibility. The Defendant contends that this violation of his right to confront Shoenig is reversible error. He cites State v. Wright, 96-786 (La.App. 3 Cir. 2/19/97); 690 So.2d 850, writ denied, 97-0665 (La.9/26/97); 701 So.2d 978. However, we note that the Wright case was reversed because the court allowed a child witness to testify at trial via closed circuit television without a sufficient showing of necessity.
In the instant case, neither the Defendant nor Shoenig took the stand during the trial. Further, the admission of statements of co-defendants has been addressed by the federal courts. In Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), the court held that the confrontation clause bars admission of incriminating statements by non-testifying co-defendants at their joint trial. Indeed, the co-defendant's statement does not appear to be admissible against a defendant under any circumstances. See United States v. Flores, 985 F.2d 770 (5th Cir. 1993), and Lilly v. Virginia, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). In Lilly, the Supreme Court left open the possibility that a co-defendant's statements might be admissible against the other defendant, but failed to articulate factors which would permit such admissibility. The Flores court held that such statements are per se inadmissible until the Supreme Court specifically establishes factors governing the admissibility of these statements. See also State v. Harris, 98-2113 (La.App. 1 Cir. 6/25/99); 739 So.2d 312, and State v. Coates, 27,287 (La.App. 2 Cir. 9/27/95); 661 So.2d 571, writ denied, 95-2613 *183 (La.2/28/96); 668 So.2d 365, which hold that incriminating statements of non-testifying co-defendants are not admissible against a defendant. However, this court has held that a co-defendant's statement may be admissible against a defendant if the statement is sufficiently self-inculpatory. State v. Anthony, 97-91 (La.App. 3 Cir. 6/4/97); 695 So.2d 1142, writ denied, 97-1774 (La.11/26/97); 703 So.2d 645.
However, the admissibility question need not be specifically answered since the harmless error analysis applies. In both Lilly and Cruz, the Supreme Court specifically noted that erroneous admission of such statements is still subject to the harmless error analysis. In both Coates and Harris, the courts held that the incriminating statements were improperly admitted, but that the statements were merely cumulative of other evidence introduced at trial or were harmless in light of the overwhelming evidence against the defendant. In the case sub judice, the Defendant's videotaped confession left no doubt that he committed the crime. In addition, one of the co-defendants, Michael Guillory, testified at trial that he was present when the Defendant raped S.V. Under these circumstances, we find that Shoenig's confession, which was corroborative of the Defendant's, was merely cumulative and was harmless in light of the overwhelming evidence of Defendant's guilt. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2:
The Defendant contends that the trial court erred in allowing Detective Bradley LeRoy to testify from the statement of the victim. On cross examination, LeRoy testified that the victim told him that she removed her boots before the first rape began. On redirect, Detective LeRoy testified as follows:
Q Now, let's go right to the boot part
A Okay.
Q and how she became undressed. What did she tell you about that?
A She was scared, and Forrest Bradford told himtold her that she would have to give him something in return for a ride.
Q And what about the boots?
A And she removed her boots and the rest of her clothing.
Q In her statement, what part of her clothing, do you recall, that she said that she had to take off herself?
A Her shirt and pants and panties, if I'm not mistaken.
Q All right. Let me show you.
. . . .
Q I show you what I will mark for identification purposes as State's Exhibit 25, and ask you if you can identify this six-page document?
A It is a six-page typed statement of [S. V.].
Q Okay. I would like for you to refer tolet me see it a second, please.
MR. WARE:
Your Honor, I'm going to object to the witness testifying from that document. That's nothe didn't prepare that. He wasn'tthat's not his statement to refresh his memory.
THE WITNESS:
I was present in the room.
THE COURT:
Hold on.
MR. WARE:
That statement is hear ...
THE COURT:
Come to the Bench, please.
[BENCH CONFERENCE]
MRS. KILLINGSWORTH:
He took the statement, he witnessed the statement. His signature is on this and I can lay that foundation.
THE COURT:
I know. But what's the point you're trying to make?
MRS. KILLINGSWORTH:

*184 That he is wrong about the clothes and how they came off. And it specifically says what happened in the statement. And since Ron brought it up, I want the correct statement to
MR. WARE:
But it's not hishe didn't author the statement.
THE COURT:
Well, it doesn't matter. You asked him questions about
MR. WARE:
I understand that, Your Honor.
THE COURT:
You know, you're asking about the prior inconsistent statements, and she's now going into prior consistent statements. I think it's
MR. WARE:
I would object to him refreshing his memory from her statement.
THE COURT:
Well, yeah, I understand, but he prepared it; he's the one who typed it, and he's the officerhe testified about what she said and he was wrong, and now his memory is being refreshed. So, it would be just like if he did it from an offense report.
MR. WARE:
The same objection. I mean
THE COURT:
All right. Objection's overruled.
MRS. KILLINGSWORTH:
Thank you.
[BENCH CONFERENCE CONCLUDED]
Q I'd ask that you refer to page three in the lower portion of the statement and read the portion where Miss V[ ....] tells you about how her clothes came off. Before you say anything, just tell me when you're finished.
A Oh, Okay.
Q Read it to yourself.
A (Witness complies) Okay.
Q You're finished?
A I was incorrect.
Q Does that refresh your memory somewhat
A Yes.
Q about what Miss V .... actually told you about how her clothes came off?
A Yes, ma'am.
Q How did they come off?
A Forrest Bradford threatened to hurt her and told her she had better take her clothes off. She started unlacing her boots and removed her boots. Forrest Bradford pretty much tore her clothes the rest of her clothing off.
Q Okay. And that's what she told you on
A Yes.
Q September 29th, 1998?
A Yes, ma'am.
The Defendant contends that the trial court erred in allowing Detective LeRoy to "refresh" his memory by reviewing the victim's statement. He maintains that when Detective LeRoy initially testified that the victim removed her own clothes he indicated no inability to remember. However, after reviewing the statement that he took from the victim, Detective LeRoy testified that he was wrong. The Defendant states in brief that the hearsay exception of refreshed testimony from a recorded recollection does not apply in this situation. La.Code Evid. art. 803 states certain situations are not excluded by the hearsay rule, even though the declarant is available as a witness, including recorded recollection defined in Article 803(5) as:
A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly.
The State argues that both the recorded recollection hearsay exception and the public record exception apply in this case. *185 La.Code Evid. art. 803(8) states, in pertinent part, that:
(a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:
. . . .
(iii) Factual findings resulting from an investigation made pursuant to authority granted by law. Factual findings are conclusions of fact reached by a governmental agency and may be based upon information furnished to it by persons other than agents and employees of that agency.
La.Code Evid. art. 612(B) states:
In a criminal case, any writing, recording, or object may be used by a witness to refresh his memory while testifying. If a witness asserts that his memory is refreshed then he must testify from memory independent of the writing, recording, or object. If while testifying a witness uses a writing, recording, or object to refresh his memory an adverse party is entitled, subject to Paragraph C, to inspect it, to examine the witness thereon, and to introduce into evidence those portions which relate to the testimony of the witness.
The case law does not require a witness to make a direct statement that he has an inability to remember before it is permissible for the witness to use a writing to refresh his memory. In State v. Hookfin, 476 So.2d 481 (La.App. 1 Cir.1985), the first circuit held that the state laid a proper foundation for allowing a witness to refresh her memory. On cross examination, the witness testified that she remembered the victim had told her he was sodomized with a broom handle. However, on redirect the witness was allowed to review a transcript of an interview with the victim wherein she was told he was abused with broom straws, rather than a broom handle. The court found it was "abundantly clear from the witness' exchange with defense counsel during cross examination that she did not remember Joe's precise statement made during their interview until after examining a transcript of that interview. Thus, an adequate foundation was laid for permitting the witness to refresh her memory by reference to the transcribed interview." Id. at 490. We find the same situation in this case and reach the same conclusion reached by our brethren of the first circuit in Hookfin.
In the instant case, Detective LeRoy maintained that the victim told him she removed her own clothes. However, once he read the victim's statement, he said that he was incorrect and that his memory was now refreshed. Detective LeRoy then corrected his prior testimony by stating that the victim had told him on September 29, 1998, that she removed her boots and then one of the suspects tore her clothes off. In brief, the Defendant cites State v. Woods, 619 So.2d 803 (La. App. 1 Cir.1993), for the holding that absent a required memory loss, the La.Code Evid. art. 803(5) hearsay exception does not permit the reading of a document before a jury or the introduction of the document into evidence. However, in the case sub judice, Detective LeRoy did not read any portion of the victim's statement to the jury, nor was the victim's statement introduced into evidence. The witness simply used the statement to refresh his memory and then testified independently of the statement pursuant to La.Code Evid. art. 612. Therefore, the trial judge did not err in allowing the witness to refer to the victim's statement in order to refresh his memory. This assignment of error is also without merit.

DISPOSITION:
The Defendant's conviction is affirmed. The district court is directed to inform the Defendant that, pursuant to La.Code Crim.P. art. 930.8, he has two years from the date his judgment and sentence become final to apply for post-conviction relief. This notice shall be in writing and sent to the Defendant within ten days of the rendition of this opinion. Written *186 proof that the Defendant received the notice shall be filed in the record of the proceedings.
AFFIRMED.
NOTES
[1] Although the victim is now an adult, she was a minor at the time of the rape; therefore, her identity is being protected.