612 So.2d 959 (1993)
STATE of Louisiana, Plaintiff-Appellee,
In the Interest of MSS, Juvenile-Appellant.
No. 24,702-JA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
*960 Alex Rubenstein, Shreveport, for juvenile-appellant.
Paul J. Carmouche, Dist. Atty., Jack A. Williams, Tommy J. Johnson, Asst. Dist. Attys., for plaintiff-appellee.
Before NORRIS, VICTORY and STEWART, JJ.
VICTORY, Judge.
Defendant, MSS, was charged in juvenile court with the aggravated battery of Samuel Ellis, III, and with simple criminal damage to property in an amount in excess of $500, but less than $50,000. An evidentiary hearing was held on May 8, 1992, and the defendant was adjudged a delinquent on each count. At disposition, MSS was committed to the Department of Public Safety and Corrections for a period of two years on Count # 1 and one year on Count # 2, to run concurrently. Defendant now appeals his convictions and sentence asserting five assignments of error based upon insufficient evidence, failure to dismiss Count # 2 at the close of the state's case, and error in permitting certain inadmissible testimony. Finding sufficient evidence to support the convictions and no errors in the trial court's rulings, we affirm.

FACTS
At the evidentiary hearing, witness Thomas Englade testified that on March 25, 1992, he and other Captain Shreve High School students had gathered at a location known as the "dirt pit" in the southeastern part of Shreveport near the intersection of East Kings Highway and Stratmore Drive. Englade and his friends arrived in several vehicles, including Englade's mother's car and Brad Elias' father's truck.
Around 10:00 p.m., a caravan of some 15 other vehicles arrived at the dirt pit and approximately twenty people emerged armed with sticks and bats. Englade testified this group was "moving quick and ... looking for somebody to fight and just *961 being destructive...." The Elias truck was quickly abandoned, but Englade stayed behind to protect his mother's car. Although his mother's car was not damaged, Englade saw several members of the group hitting Elias' truck causing substantial damage.
Thereafter, a young man named Jason Jewitt drove up in a vehicle belonging to Jennifer Simon. He was accompanied by Simon, Chris Adams, Kimberly Wall, Samuel Ellis, III, and Heather Wall, all Captain Shreve students. As Englade drove by Simon's vehicle on his way to call the police, he noted that most, if not all, of the crowd had surrounded the car. Several people were beating Ellis in the back seat, and Englade saw the defendant hitting someone outside of the vehicle on the passenger side. After witnessing the Ellis beating, Englade drove to a nearby house and called the police.
While waiting for the police to arrive, Englade saw that one member of the caravan group, who had been left behind, was chased down by some of Englade's friends and held for the police. Before the police could arrive, the defendant returned with some members of his hostile group. As the defendant's group retrieved the young man, Englade saw the defendant brandish a knife, or some other similar weapon, which he was slashing at a Captain Shreve student. When Englade returned to the scene of the incident about fifteen to twenty minutes later, he noted that Elias' truck looked worse than when it was first attacked.
Defendant was subsequently arrested and charged as a principal to both the aggravated battery of Samuel Ellis (Count # 1) and the criminal damage to Brad Elias' truck (Count # 2). Following a conviction on both counts and sentencing, defendant lodged this appeal assigning five assignments of error.

ASSIGNMENTS OF ERROR # 1, # 2 and # 5
In these assignments of error, defendant asserts that the evidence was insufficient to support a conviction on both charges. He argues that not only did the state fail to prove that he was a principal in either charge, it also failed to prove the elements of each charge, such as the use of a dangerous weapon.
A "principal" is defined by LSA-R.S. 14:24 as:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied 499 So.2d 83 (La. 1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Emerick, 499 So.2d 195 (La.App. 2d Cir. 1986); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.1984), writ denied 462 So.2d 189 (La.1984).
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Fuller, 414 So.2d 306 *962 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied 544 So.2d 398 (La.1989).
As to Count # 1, defendant argues that no evidence was presented that proved he was a principal in the aggravated battery of Samuel Ellis. In addition to not proving the element of intent, the defendant submits that the state failed to prove that he was armed with a dangerous weapon in the aggravated battery charge. Although witnesses testified that defendant may have been armed at various times during the incident, defendant contends no one stated that he hit Ellis with a dangerous weapon.
The evidence adduced at the hearing, viewed in a light most favorable to the prosecution, shows the defendant actively participated in Count # 1. The group that arrived at the dirt pit was armed with bats and clubs and was looking for a fight. Defendant arrived with the group, was a part of the group, and participated with them as a group in the beating of Ellis. All witnesses placed defendant in close proximity to the car where Ellis was being beaten and Heather Wall actually saw defendant strike Ellis from the passenger side of the car. According to Ellis, the defendant hit him once in the face with a rounded object in his hand.
Several state witnesses testified that they saw defendant with various weapons during the incident. Edgar Guzman testified he witnessed the defendant carrying a bat at the scene. Brad Elias recognized MSS at the scene and saw him carrying a stick just before he left. Kimberly Wall also identified the defendant as being a member of the group and saw him with a knife at his side.
Furthermore, the state adequately proved through the testimony of all witnesses that Ellis was severely beaten with bats and other instrumentalities used as dangerous weapons. Bruce Jones, the Caddo sheriff's deputy who investigated the incident, found numerous sticks, clubs, slapjacks, and a small caliber pistol at the scene. He noted that the victim, Ellis, had a severe laceration above his left eye which was still bleeding, as well as other scrapes and scratches.
Kimberly Wall, who had arrived in Simon's vehicle, stated that the group who approached the car was carrying bats. Samuel Ellis was recognized in the back seat and was immediately assaulted by various members of the group using bats and other objects. Heather Wall, who was also riding in the Simon vehicle, saw defendant hitting Ellis, along with the others in the group who were beating Ellis in the head with 2x4's and sticks. Ellis testified that the group jumped on him and began to beat him with bats and something that he thought looked like a crowbar. All witnesses identified defendant as a member of the group who beat Ellis with various objects, making him a principal to the crime of aggravated battery, as well as an actual participant.
The two defense witnesses confirmed that MSS was at the dirt pit that night, but neither remembered seeing him hit Ellis. Both witnesses were unable to say whether defendant participated in the beating when they were not looking. The defendant admitted being at the scene, but denied hitting Ellis or the truck.
As to Count # 2, defendant argues that, although the state's witnesses could place him at the scene, no one testified that he hit the damaged truck. This, defendant argues, shows that he was present, but does not prove beyond a reasonable doubt that he aided or abetted another to damage the vehicle. Defendant also contends the state failed to prove that he had the requisite intent to damage the vehicle.
Although no one actually saw defendant strike Elias' truck, several witnesses saw him heading toward the truck and then heard banging sounds indicating the truck was being damaged. Kimberly Wall testified that she saw defendant head toward the Elias truck and then later return to Simon's car. Heather Wall testified she saw five or six individuals bashing Elias' truck and recognized the defendant at the scene. Both Guzman and Elias testified *963 that defendant was carrying a bat and a stick during the incident.
There was no evidence presented that defendant distanced himself from the group's activities, or that he tried to prevent them. Instead, there was ample testimony that at various times he was armed with a weapon, which clearly evidences his intent to join in the group's destructive behavior. Defendant arrived with the group and left with the group once they learned that the police were on the way. Defendant also aided the others in retrieving Moore, the group member left behind, further evidencing his participation in the events that took place.
Even though no one saw defendant actually strike Ellis' truck, the evidence clearly establishes that he was an active participant in the violence that occurred at the scene. The jurisprudence is clear that a person who aids and abets another in crime is liable just as the person who directly commits it. State v. English, 582 So.2d 1358 (La.App. 2d Cir.1991), writ denied 584 So.2d 1172 (La.1991); and State v. Bates, 495 So.2d 1262 (La.1986), cert. denied, 483 U.S. 1041, 108 S.Ct. 11, 97 L.Ed.2d 800.
In this case, the trier of fact assessed the credibility of the witnesses and determined that defendant acted as a principal in both counts charged. The record, when viewed under the Jackson standard, supports the trial court's findings of fact. Thus, assignments of error # 1, # 2 and # 5 are without merit.

ASSIGNMENT OF ERROR # 3
The defendant argues that the court committed reversible error in permitting testimony, to the prejudice of the defendant, concerning weapons and events occurring after the alleged incidents for which he was charged. Specifically, defendant contends that Englade's testimony regarding defendant brandishing a knife while retrieving his friend should not have been admissible. The defendant contends LSA-C.E. Art. 403 prevents the admission of such testimony as irrelevant, prejudicial and confusing.
The trial court allowed the testimony as part of the res gestae of the actions of the group. Res gestae events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the prosecution could not accurately present its case without reference to them. State v. Haarala, 398 So.2d 1093 (La.1981); State v. Broadway, 440 So.2d 828 (La.App. 2d Cir.1983). A close connexity in time and location is required between the charged offense and the other crimes evidence. Haarala, supra. Although evidence of other crimes, wrongs or acts is generally inadmissible, it may be introduced when it "relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." LSA-C.E. Art. 404.B(1).
In the instant case, the manner in which the defendant left the scene, as a member of the group, and then returned as a group armed to retrieve another member, constitutes an integral part of the group's criminal acts. Accordingly, the admission of such relevant evidence does not constitute error.

ASSIGNMENT OF ERROR # 4
At the close of the state's evidence, the court denied defendant's motion for acquittal on Count # 2, finding sufficient evidence of defendant's participation as a principal in the destruction of Elias' truck. On appeal, defendant asserts that the evidence adduced by the prosecution on Count # 2 was confusing, contradictory, uncorroborated, and did not meet the minimum requirements of the state's burden of proof.
The denial of the motion for acquittal may be reversed on appeal only if there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion. State v. Mears, 445 So.2d 167 (La.App. 3d Cir.1984), writ denied 446 So.2d 1231 (La.1984). We have reviewed the evidence that came solely from the state's witnesses concerning defendant's involvement with the damaged truck. We find sufficient evidence presented by the state in its case in chief to convict *964 the defendant on Count # 2; thus, the trial court did not err by denying defendant's motion for acquittal.

DECREE
For the reasons set forth above, we find the defendant's assignments of error to be meritless. Accordingly, we affirm the defendant's adjudications.
AFFIRMED.