661 So.2d 571 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
John Anthony COATES, Defendant-Appellant.
No. 27287-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1995.
*574 John William Focke, II and Peter Edwards, Monroe, for appellant.
William R. "Billy" Coenen, District Attorney, Penny Wise-Douciere, Asst. District Attorney, Rayville, for appellee.
Before NORRIS, LINDSAY and WILLIAMS, JJ.
NORRIS, Judge.
John Coates was originally charged in Morehouse Parish with first degree murder, and later manslaughter by amended bill of information. He pled guilty to manslaughter under a plea bargain and was sentenced to 21 years imprisonment at hard labor. La.R.S. 14:31. Following this conviction, the Richland Parish District Attorney's office charged Coates with second degree kidnapping. La. R.S. 14:44.1. He proceeded to jury trial and was found guilty. The trial court sentenced him to 40 years imprisonment at hard labor, two years to be served without benefit of parole, probation or suspension of sentence, to run consecutively with the sentence for manslaughter. Coates filed a timely motion to reconsider the sentence. Coates now appeals both the conviction and sentence for second degree kidnapping. For the following reasons, we affirm.

Facts
The facts viewed in the light most favorable to the prosecution are as follows.[1] On the evening of July 5, 1990, Coates and two friends, Amanda Stinson and John Hall, went to the Melody Lounge located in the town of Rayville in Richland Parish. Jerry Richardson, the victim, was also at the Melody Lounge that night. Richardson left the bar with Coates, Stinson and Hall, believing that they were going to get some crack cocaine. Hall, driving the group in Coates's truck, stopped at the Mon-Ray Concrete Plant less than a mile away, and also located in Richland Parish. The three men got out of the truck allegedly just to go to the bathroom. Coates returned to the truck minutes later to get a rather large 6-volt battery; according to Stinson, he stated he was going to "beat the guy up" and "he better have at least fifteen dollars on him." R.p. 767. Stinson saw Coates hit Richardson in the head with the battery; Coates admitted at least beating Richardson with his fists. When Richardson fell to the ground, Coates and Hall began kicking him; at this point, Stinson got out of the truck and participated in kicking him. The men tore off Richardson's clothes (Coates admitted cutting his shirt off with a knife) and ordered him to get in the back of the truck. Hall then drove approximately 19 miles to a secluded, wooded area in neighboring Morehouse Parish. Coates and Hall ordered Richardson out of the truck and began beating him again. Stinson grabbed a tire tool from the truck and hit Richardson in the head. According to Stinson's statement Hall and Coates, in that order, slit Richardson's *575 throat. Coates stated that Hall actually had the knife and killed Richardson. Richardson was still alive when Coates and Hall dragged him into the woods; Stinson remained near the truck. When they returned they told Stinson that he was dead.
Richardson's battered body was discovered four days later by an area resident. The Morehouse Parish Sheriff's Department launched an investigation and soon arrested Coates, Hall and Stinson for Richardson's murder. Hall led police to the concrete plant where they recovered most of Richardson's clothes and his empty wallet; Coates had given Richardson's pants and the knife to a friend who later gave the evidence to police. Coates was indicted in Morehouse Parish for first degree murder.[2] The state then filed a bill of information charging Coates with manslaughter. Coates pled guilty to manslaughter and was sentenced to 21 years imprisonment at hard labor. He was subsequently charged in Richland Parish with second degree kidnapping, convicted by a jury and sentenced to 40 years imprisonment at hard labor, two years without benefit, to run consecutively with the previous sentence. Coates now appeals his conviction and sentence, advancing seven assignments of error.

Assignment No. 1Double Jeopardy
By this assignment, Coates contends the trial court erred in denying his motion to quash the bill of information for second degree kidnapping, based on double jeopardy. Coates urges that double jeopardy prevents a conviction for both manslaughter and second degree kidnapping.
A person cannot twice be put in jeopardy for the same offense. U.S.C.A. Const. amend. 5; La. Const. Art. 1 § 15; LaC.Cr.P. art. 591. The double jeopardy clause protects against multiple punishments for the same offense as well as a second prosecution for the same offense. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled in part on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); State v. Vaughn, 431 So.2d 763 (La.1983). Double jeopardy exists in a second trial only when the offense charged in that trial is (1) identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or (2) based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial. La.C.Cr.P. art. 596.
The Supreme Court applies the "same transaction" test to resolve double jeopardy issues. That test provides:
Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).
This rule is constitutionally required of the states. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); State v. Knowles, 392 So.2d 651 (La.1980).
In addition to this rule, the Louisiana Supreme Court applies and relies more heavily upon the "same evidence" test:
If the evidence required to support a finding of guilt of one crime would also have supported a conviction for the other, the two are the same under a plea of double jeopardy, and the defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for a conviction, not all the evidence introduced at trial.
State v. Coody, 448 So.2d 100 (La.1984); State v. Steele, 387 So.2d 1175 (La.1980).
Where one of the offenses is felony murder, it is well settled that conviction of both felony murder and the underlying felony is barred by double jeopardy. Harris v. *576 Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam); State ex rel. Wikberg v. Henderson, 292 So.2d 505 (La.1974). The underlying felony, a lesser-included offense of felony murder, is considered the "same offense" for double jeopardy purposes. Sekou v. Blackburn, 796 F.2d 108 (5th Cir.1986). When proof of the commission of a felony is an essential element of felony murder or attempted felony murder, Louisiana courts have held that the defendant cannot be convicted and punished for both the murder or attempted murder and the underlying felony. State ex rel. Wikberg, supra; State v. S.P., 608 So.2d 232 (La.App. 5th Cir.1992); State v. Lee, 554 So.2d 180 (La.App.2d Cir.1989). Also generally, conviction of any lesser included offense of felony murder and the underlying felony violates double jeopardy. State v. Powell, 598 So.2d 454, 470 (La.App.2d Cir.), writ denied, 605 So.2d 1089 (1992), and citations therein.
The Harris rule, however, bars only successive prosecutions for the underlying felony relied upon and proved in the earlier felony murder prosecution. Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). The Court in Vitale clarified its reasoning in Brown v. Ohio, supra (wherein Brown was first convicted of joyriding and later of auto theft and the court held that a conviction for a lesser-included offense precludes later prosecution for the greater offense):
`[T]he prosecutor who has established joyriding need only prove the requisite intent in order to establish auto theft.' But we also noted that `the prosecutor who has established auto theft necessarily has established joyriding as well.' Both observations were essential to the Brown holding. Had the State been able to prove auto theft, without also proving that the defendant took, operated, or kept the auto without the consent of the ownerif proof of the auto theft had not necessarily involved proof of joyridingthe successive prosecutions would not have been for the "same offense" within the meaning of the Double Jeopardy Clause. Vitale, 447 U.S. at 417, 100 S.Ct. at 2265-2266.
The U.S. Fifth Circuit, based on Harris and Vitale, supra, has thus held that "the Double Jeopardy Clause does not bar successive prosecutions for felony-murder and an underlying felony (regardless of which prosecution is first), so long as the specific underlying felony which is the subject of the earlier (or later) prosecution does not form the sole basis for the felony-murder prosecution." Sekou v. Blackburn, supra at 109 (emphasis added). Stated simply, a defendant may be convicted of both felony murder and an underlying felony if another separate felony could have served as the basis for the felony murder conviction. Neville v. Butler, 867 F.2d 886 (5th Cir.1989).
On appeal, Coates argues that the subsequent prosecution and conviction for second degree kidnapping violated double jeopardy principles because that offense could have formed the basis for his guilty plea to and earlier conviction for manslaughter (La.R.S. 14:31A(1)).[3] Applying the above cited principles of law, however, we find no double jeopardy violation in the instant case.
Coates's entire argument rests upon the assumption that second degree kidnapping was the predicate felony for a conviction of manslaughter under 14:31A(1). Double jeopardy would exist if the state conceded or the record showed that second degree kidnapping was the basis for Coates's manslaughter plea. Likewise, he would have a claim of double jeopardy if he pleaded not guilty and the state at trial relied on second degree kidnapping to prove manslaughter. In the *577 instant case, however, the bill of information charging manslaughter is silent as to the basis of the charge. It also cannot be determined from the record upon which provision the court relied in accepting Coates's manslaughter plea. Further had Coates pleaded not guilty, the state at trial could have proven manslaughter (under either La.R.S. 14:31A(1) or (2)(a)) without relying on second degree kidnapping. See Sekou, supra.
In Sekou, supra, the defendant and two friends robbed a restaurant in Baton Rouge, kidnapped the assistant manager, drove him to New Orleans and killed him. Sekou was convicted by a Baton Rouge jury of armed robbery and then pleaded guilty one year later in New Orleans to second degree felony murder (felony-murder without specific intent to kill, La.R.S. 14:30.1.). (Originally he was indicted for first degree murder, but that charge was reduced to second degree murder under a plea agreement.) The court denied Sekou's request for habeas corpus relief, finding no violation of double jeopardy based on his convictions of armed robbery and second degree murder. As the amended indictment for second degree murder did not enumerate any particular underlying felony, the court noted that the state could just as easily prove the kidnapping as the underlying felony under R.S. 14:30.1. Moreover, Sekou's plea and waiver of trial made it unnecessary for the state to particularize its theory of the case. In sum, the state could have proven felony murder without the armed robbery and the successive prosecution would not involve the "same offense" for double jeopardy purposes.
Similarly, in the instant case, the state was not confined to proving second degree kidnapping as the underlying felony, but could have used armed robbery (14:31A(1), 14:30), or another felony such as aggravated battery (14:31A(2)(a)) or simply shown specific intent to kill or inflict great bodily harm (14:31A(1), 14:30.1). In any event, because Coates pled guilty to manslaughter and waived trial, it was not necessary for the state to particularize its theory of the case. Sekou, supra. Under the Sekou, Vitale rationale, the later prosecution does not involve the "same offense" for double jeopardy purposes. Nor would proof of second degree kidnapping necessarily constitute an essential element of the state's manslaughter case. State v. Lee, supra; see also and compare State v. S.P., supra. Both the Blockburger rule and same evidence test are satisfied. On this record, Coates has not shown any double jeopardy violation.

Assignment No. 2Admission of evidence of the killing
Coates contends the trial court erred in allowing the state to introduce evidence regarding the victim's death. He filed five pre-trial motions in an attempt to exclude this evidence and to prevent the state from establishing the killing as the physical injury under second degree kidnapping; the court denied the motions, and allowed the evidence as part of the res gestae.[4] Coates argues that because the kidnapping occurred at least half an hour before the victim's death and in a separate parish, evidence of the killing is not part of the res gestae. He urges either the victim's death is a relevant, integral part of the events surrounding the kidnapping and warrants a ruling of double jeopardy or it is a separate crime entirely and thus irrelevant and inadmissible. Even if relevant, Coates urges the evidence should have been excluded because of prejudice. In response, the state argues the victim's death was admissible as an integral part of the second degree kidnapping.
Though generally inadmissible, evidence of other crimes, wrongs or acts may be introduced when it "relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." La.C.E. art. 404B(1) (res gestae). The Louisiana Supreme Court specifically approved the admission of other crimes evidence "when it is related and intertwined *578 with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." State v. Brewington, 601 So.2d 656 (La.1992) (per curiam). The other crimes evidence completes the story of the crime on trial by proving the connexity of events in time and place. Brewington, supra.
In the instant case, Coates and his friends brutally beat the victim, stripped and kidnapped him in Richland Parish, and drove to another parish, where the beatings escalated into knifing and eventually killed him. These events constituted one continuing transaction. State v. Griffin, 618 So.2d 680 (La.App.2d Cir.), writ denied, 625 So.2d 1063 (1993). The homicide occurred in close time and proximity to the events of the kidnapping. State v. Haarala, 398 So.2d 1093 (La. 1981); Griffin, supra.
In State in Interest of MSS, 612 So.2d 959 (La.App.2d Cir.1993), the defendant was charged as a principal to aggravated battery and simple criminal damage to property. We allowed introduction of evidence of the defendant's returning to the scene to retrieve a group member and brandishing a knife after the battery of the victim and criminal damage to a vehicle, finding that the other crimes evidence constituted an integral part of the group's criminal acts. In the instant case, the homicide which closely followed the kidnapping was relevant and constituted an integral part of the trio's criminal acts. Evidence of the victim's death was more probative than prejudicial in that it showed intent, plan and knowledge as to the kidnapping; the victim's death would prevent him from identifying the persons who robbed, beat and kidnapped him. Contrary to Coates's assertion the state did not, nor was it necessary to, use the killing to satisfy the personal injury requirement of second degree kidnapping. La.R.S. 14:44.1A(3).
Our previous finding of no double jeopardy does not necessarily preclude the admissibility of the victim's death as an integral part of the act or transaction. State v. Caillouet, 528 So.2d 1108 (La.App. 3d Cir.1988), writ denied, 535 So.2d 741 (1989). In Caillouet, supra, the court specifically rejected this argument, finding that evidence of the defendant's shooting and wounding the victim (aggravated battery) was part of the res gestae of the simple kidnapping, yet did not violate double jeopardy. In sum, the state could not have accurately presented its kidnapping case without reference to the closely connected and intertwined evidence of the homicide. Brewington, Haarala, supra. The trial court did not err in denying Coates's pre-trial motions.

Assignment No. 3Challenge for cause
Coates asserts the trial court erred in denying his challenge for cause to prospective juror, Reverend Samuel Shirley, thus requiring him to exhaust a peremptory challenge to remove Reverend Shirley. During voir dire examination defense counsel asked Reverend Shirley:
Q: If you're accepted for this jury and you'll be sworn under oath to follow the law as given to you by the Court, will you accept and follow that law?
A: Yes.
Q: Even if you disagree with the law?
A: Yes.
Q: Even if it disagrees with God's law, as you interpret God's law to be?
A: If I believe any law contradicts God's law, I would go with God's law first.

* * *
Q: I believe, as I've mentioned before, if you're selected for the jury, you and your fellow members of the jury will be the judges of the fact and the facts would be basically what is evidence, what comes from the witness stand or through exhibits. At the conclusion of the trial, the Court will instruct you as to the lawstatutory lawman's lawyou will be sworn under oath to follow that law, to apply the facts to the law and reach a verdict. As I understand it, you can follow man's law until it possibly contradicts God's law. Now other than that, other than having to follow your conscience, would you be able to put aside any other feelings of prejudice, sympathy, or passion that you might have in this *579 case and decide the case solely on the facts presented in this courtroom?
A: Yes, I believe so.
R. pp. 349, 351.
The state then asked him:
Q: Just a couple of questions. Brother Shirley, to make sure that I understand something, I don't know of any instructions the Judge gives that violates the Ten Commandments or anything in the Bible I know of, but the conceptmost of what the Judge talks about is procedures in criminal cases. None of these procedures we talked about violate any of your conscience of God's law.
A: I don't foresee any, no. I don't foresee any contradictions.
R. pp. 351-352.
Both the state and defense temporarily accepted Reverend Shirley. Coates's subsequent challenge for cause was denied and he used a peremptory challenge to excuse Reverend Shirley; he ultimately used all 12 peremptory challenges.
In order to preserve the issue for appeal, the defendant must object to the ruling refusing to sustain a challenge for cause. La.C.Cr.P. art. 800. If the defendant has exhausted all of his peremptory challenges, as in this case, no showing of prejudice is needed; he need only show the erroneous denial of a challenge for cause. State v. Robertson, 92-2660 (La. 1/14/94), 630 So.2d 1278); State v. Fairley, 25,951 (La.App.2d Cir. 5/4/94), 645 So.2d 213, writ denied, 94-2909 (La. 03/24/95), 651 So.2d 287. The trial judge is vested with broad discretion in ruling on challenges for cause; such rulings will be disturbed only when review of the entire voir dire reveals an abuse of discretion. Robertson, supra; State v. Knighton, 436 So.2d 1141 (La.1983). Regarding discretion, the Louisiana Supreme Court has stated:
A refusal by a trial judge to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. `[A] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably inferred.' Robertson, supra, 630 So.2d at 1281 (citations omitted).
As Coates properly preserved the issue for appeal and used all of his peremptory challenges, we address only whether the trial court erroneously denied his challenge for cause. A reading of the entire voir dire of Reverend Shirley shows that he was willing to decide the case impartially according to the law and the evidence. Though he admitted he would apply "God's law" over "Man's law" if the former contradicted the latter, Reverend Shirley was fully aware of the law at issue as presented by counsel, and found no contradictions. Moreover, Coates did not point to any potential conflicts that could occur in this case. Significantly, Reverend Shirley's responses did not suggest that his religious beliefs impaired his ability to render a fair and impartial verdict. Cf. State v. Wiley, 614 So.2d 862 (La.App.2d Cir.1993) (affirming trial court's ruling sustaining challenge for cause because of prospective juror's religious beliefs which prevented her from judging another). On this record, we conclude that the trial court did not abuse its discretion in denying Coates's challenge for cause.

Assignments Nos. 4 and 5Confession of co-defendant, John Hall
These two assignments contest rulings denying Coates's motion for a mistrial and objection to the admission of Hall's confession. The assignments arose in the following context. The state called Hall as a witness and began questioning him about the events that occurred on July 5, 1990. Hall, however, professed a sudden lapse of memory. The state allowed him to review his confession of July 14, 1990 and recent interview with investigators on April 8, 1994, but Hall still claimed he could not recall the incident. At the state's request, the court then declared Hall a hostile witness. La.C.E. art. 611.
*580 Using Hall's confession, the state read aloud certain questions and Hall's answers, and then asked if Hall remembered the particular event. Hall continued to claim he could not remember. During this line of questioning, defense counsel moved for a mistrial under La.C.Cr.P. art. 775(3). He argued that the state was essentially introducing Hall's confession by using leading questions, and that such use of the confession combined with Hall's lack of memory deprived him of any meaningful confrontation, specifically the right to cross examination. The court denied the motion and allowed the state to continue with its mode of questioning. Following the defense's cross examination, the state sought to introduce Hall's custodial confession into evidence under La. C.E. art. 804A(3), B(3), contending Hall was unavailable and his statement was a declaration against his penal interest. Defense counsel objected, reurging the grounds previously submitted. The court overruled the objection and allowed the confession into evidence.
On appeal Coates contends that the trial court's rulings, allowing Hall's confession into evidence, abridged his right to confrontation and cross examination under the Sixth Amendment Confrontation Clause and La. Const. art. 1 § 16. The initial issue is whether the custodial confession of a non-testifying, unavailable, separately tried co-defendant implicating an accused in the crime charged may be admitted against the accused as a statement against the confessor's penal interest under La.C.E. art. 804B(3).[5]
Article 804B(3) defines a statement against interest as
a statement which at the time of its making was so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.
This "against interest" requirement assures some degree of trustworthiness as a person ordinarily would not make a statement disadvantageous to himself without believing it to be true. State v. Hammons, 597 So.2d 990 (La.1992).
Because Louisiana's rule regarding statements against penal interest closely patterns Fed.R.Evid. 804(b)(3), federal jurisprudence on the instant issue is helpful. State v. Hammons, supra. Each class of statements that fall within the against penal interest exception must be analyzed to determine if it is inherently reliable. United States v. Flores, 985 F.2d 770, 776 (5th Cir.1993). Custodial confessions of a non-testifying, unavailable co-defendant offered against an accused to inculpate him have traditionally been viewed as inherently suspect and inadmissible. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); United States v. Flores, 985 F.2d at 779; United States v. Sarmiento-Perez, 633 F.2d 1092 (5th Cir. 1981). Those passages of the confession detailing the accused's conduct or culpability are presumptively unreliable because they "may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another." Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986).
The Supreme Court recently discussed the admissibility under 804(b)(3) of an unavailable co-defendant's custodial confession implicating the defendant in the crime charged. Williamson v. United States, ___ U.S. ___, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). The court found the whole confession inadmissible because Rule 804(b)(3) does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. The trial court is not at liberty to assume that a statement is self-inculpating because it is part of a fuller confession, especially when the statement implicates someone else. Williamson, supra. The strong motivation to *581 implicate another and to exonerate oneself makes a custodial confession about another's actions less credible than ordinary hearsay evidence. Lee v. Illinois, supra. However, the court further concluded that any statements within the confession that are truly self-inculpatory are admissible under Rule 804(b)(3). This determination can be pursuant to a fact-specific inquiry by the trial court.
This federal jurisprudence is consistent with the legislative history of Louisiana's against penal interest exception. The original comment to art. 804B(3) states that the provision was not intended to prescribe an approach that should be followed in regard to statements containing assertions that are both helpful and harmful to the declarant, and recommends that the traditional approach of excluding predominantly self-serving statements be followed. Original Comment (g) to art. 804B(3), Acts 1988, No. 515 (Reg.Sess.); G. Pugh et al., Handbook on Louisiana Evidence Law (St. Paul, West Pub. Co., 1995), 493.
The instant situation is analogous to that in Williamson because Hall's statements which inculpated Coates were made as part and parcel of his generally self-inculpatory confession. Hall clearly implicated himself in the kidnapping, but nonetheless attempted to tag Coates with the greater culpability. Hall's motivation is plainly suspect as he, along with the others, was under arrest and charged with first degree murder when he gave the confession. Under the circumstances, Hall could have misrepresented or exaggerated Coates's role in the incident out of the "very natural desire to curry favor from the arresting officers, the desire to alleviate culpability by implicating others, the enmity often generated in a conspiracy gone awry, or the desire for revenge." United States v. Sarmiento-Perez, 633 F.2d at 1102. In fact, Hall was ultimately allowed to plead guilty to manslaughter and second degree kidnapping. On this record, we conclude that Hall's confession as a whole is not sufficiently against his penal interest so as to be reliable under La.C.E. 804B(3). It should therefore not have been admitted in its entirety. This finding precludes discussion of the constitutional issue.
We nevertheless conclude that the erroneous admission of Hall's confession under the circumstances was harmless error and does not mandate a reversal or remand. Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); La.C.Cr.P. art. 921.
In the instant case Hall's confession was essentially cumulative, relating much the same substance regarding the kidnapping as Coates's own confession (wherein Coates admitted he beat, stripped and forcibly removed Richardson to another location, beat him again and then played a part in the events that caused Richardson's death) and Stinson's testimony. The defense was able to cross examine Stinson at great length as to Coates's involvement in the kidnapping. Moreover, the forensic and physical evidence (for instance, Richardson's wounds, blood spatters, the discarded bloody clothes, wallet, knife) introduced at trial substantially corroborated the testimony. Overall, the properly admitted evidence viewed in the light most favorable to the state, proved beyond a reasonable doubt that Coates hit Richardson with his fists and a battery, cut off Richardson's shirt, took his pants and discarded an empty wallet, forced him to ride to another parish, beat him again, and then either as an actor or principal participated in the stabbing that caused Richardson's death. The trial court's admission of Hall's confession does not require reversal; it did not contribute to the verdict and was harmless beyond a reasonable doubt. Chapman v. California, supra. These assignments lack merit.

Assignment No. 6Prosecutorial misconduct
Coates contends the trial court erred by denying his motion for a mistrial based on prosecutorial misconduct. During Hall's testimony, the following exchange took place:
Q: Okay. Did you tell the Department of Corrections' people bringing youdo you remember riding here with them?

*582 A: Yes, sir.
Q: That you had received a threat and wanted a deputy to meet your car at the Ouachita Parish line?
A: No, sir.
Q: Did you receive a threat before you came here to this court, sir?
A: Not that I remember.
Q: Did you telland I'm asking you this under oathdid you tell the Department of Corrections' people that were bringing you here to this court a couple of days ago, to this courthouse, that you had received a threat?
A: No.
R. pp. 732.
According to Coates, the state committed prosecutorial misconduct by its reference to the "Department of Corrections people" because it implied that certain persons would be called to impeach his testimony, but did not produce anyone from the Department; thus, the state was allowed to wrongly suggest that Hall had been threatened. When the state rested its case, Coates moved for a mistrial under La.C.Cr.P. arts. 775 and 770. The court denied the motion and Coates noted his objection for the record.
In brief on appeal Coates apparently concedes that, under these circumstances, La.C.Cr.P. art. 770(2) provides no basis for a mistrial. La.C.Cr.P. art. 775 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered ... when prejudicial conduct [inside] the courtroom makes it impossible for the defendant to obtain a fair trial[.]
The decision whether to grant a mistrial lies within the trial court's sound discretion, and the court's denial of a motion for mistrial will not be disturbed absent an abuse of that discretion. State v. Smith, 430 So.2d 31 (La. 1983). A mistrial should be declared only where the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. Smith, supra.
Coates did not contemporaneously object to the prosecutor's line of questioning; he objected only after the state rested its case. He is therefore precluded on appeal from asserting that any prejudice resulted from the question itself. La.C.Cr.P. art. 841. He is limited to arguing that the prosecutor's failure to actually call witnesses from the Department to verify that a threat was in fact made resulted in substantial prejudice.
Coates has not proved that the prosecutor's actions constituted misconduct, an argument available only in the rarest and most egregious circumstances. State v. Bishop, 571 So.2d 749 (La.App.2d Cir.1990). Coates has not shown, either at trial or on appeal, that the prosecutor mentioned the alleged threat, knowing the information was untrue. On the contrary, considering Hall's persistence regarding his sudden loss of memory, such questions were entirely proper. See State v. West, 319 So.2d 901 (La. 1975). We find no abuse of discretion in the trial court's denying Coates's motion for mistrial.

Assignment No. 7Excessive sentence
By this assignment, Coates urges the trial court erred in departing upward from the Sentencing Guidelines' suggested range because the aggravating factors it cited also constituted elements of the crime of second degree kidnapping. In addition, he contends the court erred in running this sentence consecutive with the 21-year manslaughter sentence.
Under the Guidelines, which were in effect at the time of Coates's sentencing[6], the trial judge was required to consider the Guideline provisions, but had complete discretion to reject them and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of conviction. State v. Smith, 93-0402 (La. 7/4/94) (on rehearing), 639 So.2d 237. The judge need only state for the record the considerations taken into account and the factual basis for the sentence imposed. La.C.Cr.P. art. 894.1. When a trial judge complies with these requirements, we may only review the sentence for constitutional excessiveness. State v. Smith, supra.
*583 A sentence violates La. Const. Art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate when the crime and punishment, considered in light of the harm done to society, shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La. 1985); State v. Thompson, 25,583 (La.App.2d Cir. 01/19/94), 631 So.2d 555. A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); Thompson, supra.
At sentencing, the trial judge considered the presentence investigation and the sentencing guidelines. He noted that the guidelines, grid cell 1-F, suggested a sentence range of 6 to 8.5 years, but determined that a number of aggravating factors justified an upward departure. These included deliberate cruelty to the victim; threats of actual violence; committing the offense to conceal another; significant permanent injury to the victim and his family; use of a dangerous weapon; committing multiple offenses for which separate sentences were not imposed; being under the influence of alcohol and drugs; and that this was the most vicious and heinous crime the judge had ever encountered. The judge also considered mitigating circumstances, but nonetheless deemed the maximum statutory sentence necessary, and sentenced Coates to 40 years imprisonment at hard labor, two years without benefit.
Admittedly some of the aggravating factors stated above are also elements of second degree kidnapping, for instance, use of a dangerous weapon and facilitating another offense, and cannot be considered as an aggravating circumstance. La.S.G. § 209B. However, one aggravating circumstance is sufficient to justify an upward departure from the recommended guidelines grid. State v. Tate, 25,765 (La.App.2d Cir. 02/23/94), 632 So.2d 1213. An aggravating circumstance is a factor present to a significant degree which makes the case more serious than the typical case. La.S.G. § 209B. Contrary to Coates's argument that deliberate cruelty is entirely subsumed within the elements of actual violence and physical injury, the circumstances of this case plainly distinguish it as more serious than the "typical" second degree kidnapping. The victim was tortured for a protracted period of time; he was severely beaten and kicked, stripped of his clothing and humiliated, later beaten again and finally stabbed and slashed numerous times with a pocketknife. In addition to the heinous nature of the crime, the victim's family suffered significant and permanent emotional injury and Coates committed several other offenses for which separate sentences were not imposed. In sum, the aggravating factors in this case justified the trial court's upward departure from the Guidelines.
The trial judge imposed a sentence within the statutory limits. La.R.S. 14:44.1C. He properly considered the Guidelines and stated for the record the considerations taken into account and the factual basis for the sentence imposed. La.C.Cr.P. 894.1; State v. Smith, supra. The sentence is proportionate to the crime committed and does not shock the sense of justice. Under the circumstances, the sentence is not an abuse of discretion.
Coates further argues that the sentence is excessive because ordered to run consecutively with the manslaughter sentence. La.C.Cr.P. art. 883 provides that "[i]f the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively." Concurrent sentences are not mandatory, nor are consecutive sentences necessarily excessive, simply because two convictions stem from the same course of conduct. State v. Ortego, 382 So.2d 921 (La. 1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58; State v. Lighten, 516 So.2d 1266 (La.App.2d Cir.1987). The court may expressly direct that the sentences be served consecutively, and simply state for the record the factors considered and reasons justifying the consecutive terms. State v. *584 Smith, 26,661-26,663 (La.App.2d Cir. 03/01/95), 651 So.2d 890; State v. Lighten, supra. Factors to be considered include those aggravating circumstances enumerated for sentencing. State v. Lighten, supra. It is within the trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Ortego, supra; State v. Derry, 516 So.2d 1284 (La.App.2d Cir. 1987), writ denied, 521 So.2d 1168 (1988).
In the instant case, the trial court "expressly directed" that Coates's sentence for second degree kidnapping run consecutively with the sentence for manslaughter. The court's lengthy and detailed consideration of the aggravating circumstances in conjunction with the Sentencing Guidelines plainly sufficed as justification for the consecutive terms. See State v. Nelson, 467 So.2d 1159 (La.App.2d Cir.1985). The gravity and viciousness of this crime, coupled with its senseless nature, the severity of harm inflicted on the victim and the benefit of Coates's previous plea bargain, supports imposition of consecutive sentences in this case. See State v. Smith, 651 So.2d at 905. We find no abuse of discretion.
We have examined the record for errors patent and found none. La.C.Cr.P. art. 920(2). For the reasons expressed, Coates's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] We exclude mention, however, of facts contained in the confession of co-defendant, John Hall. See discussion of Assignments Nos. 4 and 5, infra.
[2] Co-defendant Hall pled guilty in Morehouse Parish to manslaughter and second degree kidnapping. He was sentenced to 21 years for manslaughter and 20 years for the kidnapping, to run consecutively. Stinson pled guilty to aggravated battery; she was sentenced to 10 years imprisonment.
[3] R.S. 14:31A in pertinent part defines manslaughter as "(1) a homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection, or (2) a homicide committed without any intent to cause death or great bodily harm (a) when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person."

Under La.R.S. 14:30.1A(1) first degree murder is the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of, inter alia, second degree kidnapping.
[4] Coates filed a motion to exclude other crimes evidence, a motion to reconsider his motion to quash the bill of information on double jeopardy grounds, a motion to exclude prospective jurors with knowledge of the victim's death, a motion for change of venue and/or individual voir dire, and a motion in limine. On appeal, as at pre-trial argument, Coates limits his discussion to the other crimes and double jeopardy issues.
[5] Though Coates does not address the issue, the unavailability requirement is plainly satisfied. La.C.E. art. 804A(3).
[6] The Guidelines were recently repealed by La. Acts 1995, No. 942, effective August 15, 1995.