| iYELVERTON, Judge.
Otis James Anthony, the defendant, was charged with second degree murder, a violation of La.R.S. 14:30.1, armed robbery, a violation of La.R.S. 14:64, and aggravated kidnapping, a violation of La.R.S 14:44, by bill of information, and was convicted of each of these offenses on August 6,1996. He was sentenced to life imprisonment at hard labor for the offense of second degree murder but was not sentenced on the other two offenses. He now appeals his conviction and alleges three assignments of error.
We shall vacate the conviction for reasons which we will explain in our discussion of Assignment No. 2. Nevertheless, we will discuss the merits of the other two assignments, taking No. 3 first, after a recitation of the facts.
|2FACTS
On June 13,1995, Joe L. Walker, Jr., came from Shreveport to Coushatta and met with his cousin Ricky Ray Lewis; Richard “LA” Hobley was with Joe, Jr. The men then went to get Otis Anthony, who rode with them to Steve’s Liquor Store in Natchitoches with the intent of robbing it. Unable to rob the store before it closed, the foursome followed the owner, Steve Traylor, to his home. Hob-ley and Lewis attempted to rob Traylor, but the victim entered his house before they could do so. Unsuccessful, the foursome returned to Natchitoches. The following evening they returned to Traylor’s liquor store and followed the victim from his liquor store to his home where Hobley, Lewis, and Walker attempted to rob him while the defendant waited in Walker’s car. After they discovered he had no money, Lewis and Hobley kidnapped the victim and eventually shot him, causing his death.
ASSIGNMENT OF ERROR NO. 3
The defendant contends that the State failed to prove its case beyond a reasonable doubt under the Jackson v. Virginia standard.
On June 15, 1995, the body of Stephen Traylor was discovered at the Natchitoches Parish landfill on Highway One North. Deputy Danny Hall of the Natchitoches Parish Sheriffs Office arrived on the scene but was unable to develop any leads in the investigation. Six or seven weeks later, Major Larry Rhodes of the Red River Sheriffs Office contacted Hall and informed him that he had received information regarding the murder from Eva Valentine. Valentine, the former girlfriend of Ricky Ray Lewis, told Rhodes that Lewis had admitted his involvement in the UTraylor murder to her. Deputy Hall and Deputy Travis Trammell, Jr. interviewed Lewis, and based on the information they obtained from him, three other suspects, Richard Hobley, Joe Walker, and the defendant, were identified. The defendant admitted his involvement dining questioning. The State introduced the defendant’s tape-recorded confession during the testimony of Deputy Trammell and played the tape for the jury. The defendant admitted in his confession that he was present when his co-defendants decided to commit the robbery. However, regarding his role in the crime, he stated, “I didn’t have a part. I was just there.”
Joseph Leo Dupree testified that he saw a man walking slowly back and forth near the victim’s home on the night of the murder. He did not see the man’s face, but described him as being six feet tall, about one-hundred and fifty pounds, and brown-skinned. He *1144 saw the man and another man argue near the victim’s vehicle, a Lincoln Town Car. He testified that the Lincoln then sped off, the two men ran through another neighbor’s yard, and he saw a white Geo or Toyota back out of the yard and speed down the road.
Ricky Ray Lewis was called to the stand, but refused to testify. Deputy Trammell was then recalled to the stand, and the State played a copy of Lewis’ tape-recorded confession to the jury while Lewis was in the courtroom. In this statement, Lewis implicated himself and the three other men in the homicide and stated in his confession that the defendant chose the victim as the target for the robbery, and also, that the defendant went into the store to buy beer and to “check out the scene.” He also stated that the defendant gave directions to the victim’s home, but that the defendant remained in the car during the actual kidnapping and robbery that occurred at the ^victim’s home. Lewis stated that Walker left his gun in the back seat, got back into his car where the defendant was waiting, and Walker and the defendant drove away.
There was sufficient evidence to convict the defendant of second degree murder committed during the perpetration of an armed robbery based on the testimony adduced at trial. Although there is some discrepancy between Lewis’ and the defendant’s statements regarding whether Hobley or Walker had a gun, the defendant’s statements to the police reveal that he was aware that one of his co-defendants was armed with a dangerous weapon on the night of the crime. Also, although he denied having any participation in the robbery, he gave the police concrete details about the roles that the other three men played in the crime. He told police that Hobley and Walker planned to wait in the bushes until the victim came home and that Lewis’ job was to grab the bag of money from the victim. The evidence is sufficient to convict.
ASSIGNMENT OF ERROR NO. 1
The defendant contends that the State failed to produce exculpatory evidence of initial statements of co-defendant Ricky Ray Lewis which did not implicate him.
The defendant argues that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) in not disclosing that co-defendant Ricky Ray Lewis did not implicate the defendant when he made his initial statement to Detective Travis Trammel of the Natchitoches Parish Sheriffs Office. The State responds that the defendant had notice at a pretrial hearing of Lewis’ prior denials of his own | sinvolvement in the crime and was aware that Lewis had changed his story prior to giving his recorded confession.
Under Brady, due process is violated by the suppression of favorable evidence by the prosecution when the production of such evidence is requested and when the evidence is material to either the guilt or innocence of the accused, regardless of the good or bad faith of the prosecution. In United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court held that Brady applies to both exculpatory and impeachment evidence, and,
regardless of request [by a defendant], favorable evidence is material and constitutional error results from its suppression by the government, “if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” 473 U.S., at 682,105 S.Ct., at 3383 (opinion of Blackmum, J.) id., at 685, 105 S.Ct., at 3385 (White, J., concurring in part and concurring in judgment).
Kyles v. Whitley, 514 U.S. 419, -, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995).
The Court went on to emphasize that the Bagley threshold for materiality is not met by means of a sufficiency of the evidence review. Thus, a defendant is not required to show that there is insufficient evidence to support a conviction without the inculpatory evidence that would have been affected by the undisclosed evidence; rather, a defendant must show that the “favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.” Id. at -, 115 S.Ct. at 1566; See also State v. Strickland, 94-0025 (La.11/1/96); 683 So.2d 218. Fur *1145 ther, the Court stressed that once a reviewing court discovers a Bagley violation, the harmless error rule does not apply and that materiality under Bagley is |6analyzed by reviewing the undisclosed evidence “collectively, not item-by-item.” Kyles, 514 U.S. at -, 115 S.Ct. at 1566-1567.
At trial, the defendant stated that he was referring specifically to information obtained by Detective Trammell during the initial conversation between the officer and Lewis that occurred after Lewis was Mirandized. This conversation was not reduced to a typed statement and was not tape recorded. The defendant moved for a mistrial arguing that the State had an obligation to obtain any notes the officer might have compiled regarding that information, and to turn it over to him. The trial court denied the motion stating that the information had been revealed at a prior suppression hearing. On April 6, 1996, (four months before trial) Detective Trammell testified during the suppression hearing that Lewis had changed his story several times during the interview. However, there was no direct testimony from Detective Trammell that Lewis did not implicate the defendant in his initial statement.
There was no violation of Brady in this case as the evidence the defendant contends the State should have revealed does not “reach the level of materiality which undermines confidence in this trial’s outcome.” Strickland, 683 So.2d at 235. It is unlikely that, had the defendant been aware that Lewis had not implicated him in his initial statements to the police, the outcome of the trial would have been different.
ASSIGNMENT OF ERROR NO. 2
The defendant contends that the trial court erred in allowing the entire recorded statement of Ricky Ray Lewis to be played in front of the jury when he was present in the courtroom and could be cross-examined. He argues that while portions 17of the statement might have been admissible under Article 804(A) of the Louisiana Code of Evidence, the replay of the entire statement was prejudicial to the defendant, and the District Attorney should have been allowed to play only certain portions of the statement in response to each question.
When the State called Lewis to the stand and questioned him about the kidnapping, robbery, and murder of Steve Traylor, Lewis was unresponsive:
Q. State your full name.
A. Ricky Ray Lewis
Q. And Mr. Lewis, you were born March
5,1996, is that right?
A. Yes.
Q. You’re about thirty (30) years old now?
A. Yes.
Q. You were one of the four (4), along with Otis Anthony, that was charged with robbery, kidnapping and murder of Steve Traylor, is that right?
A. I don’t know what you’re talking about.
Q. You, Mr. Lewis pled guilty to your involvement in this offense and serving forty-five (45) years Louisiana Department of Corrections, is that correct?
A. I don’t know what you’re talking about.
Q. Mr. Lewis, do you realize that you do not have a privilege against self-incrimination as you sit here?
A. I’m aware of that.
Q. And do you realize that if you refuse to testify that you’re subjecting yourself to contempt of Court?
A. I’m aware of that.
IsQ,. And subject to potential perjury charges?
A. I’m aware of that.
Q. Are you refusing to testify?
A. Correct.
The State then recalled Deputy Trammell, one of the officers who had recorded Lewis’ confession, to the stand for the purpose of playing the tape-recorded confession to the jury, over objection of counsel. The trial court overruled the defendant’s objection and allowed the jury to hear the tape in its entirety. The jury was also given a transcript of the tape. Lewis was recalled to the stand for the purpose of cross-examination *1146 by the defense, but was again unresponsive, and was ultimately held in contempt by the trial court. Thus, Lewis was “unavailable as a witness” under La.Code Evid. art. 804(A)(3) which states:
A. Definition of unavailability. Except as otherwise provided by this Code, a de-clarant is “unavailable as a witness” when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
[[Image here]]
(3) Testifies to a lack of memory of the subject matter of his statement;
Thus, this court must determine whether Lewis’ confession is admissible as a statement against penal interest under La.Code Evid. art. 804(B)(3). A similar situation occurred in State v. Coates, 27,287 (La.App. 2 Cir. 9/27/95); 661 So.2d 571, writ denied, 95-2613 (La.2/28/96); 668 So.2d 365. John Coates, John Hall, Amanda Stinson, and the victim, Jerry Richardson, left a local bar together one evening and |9drove to a concrete plant in Richland Parish. While there, Coates, Hall, and Stinson attacked Richardson and tore off his clothing. They then drove to a secluded area in Morehouse Parish where Coates and Hall began beating Richardson again, eventually slitting his throat and leaving him to die in the woods. The police arrested the three assailants after an investigation, and Hall led the police to the concrete plant where they recovered some of Richardson’s clothing and his empty wallet. Coates was indicted in Morehouse Parish for first degree murder but pled guilty to manslaughter. He was subsequently convicted of second degree kidnapping in Richland Parish.
When the State called Hall to the stand to testify about the crime during Coates’ trial, Hall claimed that he could not remember the events and continued to make this claim even after the State allowed him to review his confession. The court then declared Hall a hostile witness at the request of the State. The State proceeded to read questions from Hall’s confession and then read Hall’s response to those questions. Defense counsel objected and moved for a mistrial on the grounds that the State introduced Hall’s confession through leading questions, and that this tactic, along with Hall’s lack of memory, robbed the defendant of any meaningful confrontation. The court denied the motion, the State continued its cross-examination, and the defendant attempted to cross-examine Hall. Over the defendant’s objection, the court eventually found that the entire confession was admissible under La.Code Evid. arts. 804(A)(3) and 804(B)(3) as a declaration against penal interest.
Coates reviewed both state and federal jurisprudence in order to resolve the issue of whether the “custodial confession of a non-testifying, unavailable, separately tried co-defendant impheating an accused in the crime may be admitted [ ipagainst the accused as a statement against the confessor’s penal interest under La.Code Evid. art. 804(B)(3).” Coates, 661 So.2d at 580. The court first discussed the recent Supreme Court ease, Williamson v. United States, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) which addressed this issue. In Williamson, the Court held that the exception to the hearsay rule for statements against penal interest does not allow the admission of “non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.” Id. at 599-601, 114 S.Ct. at 2435. Thus, a trial court cannot assume that an entire statement is self-inculpating when it is part of a fuller confession that implicates someone else. Id. Reginald Harris, the co-defendant, refused to testify at trial even though the prosecution granted him use immunity and the court ordered him to testify, and eventually held him in contempt of court. The trial court then allowed a Drug Enforcement Agent to testify about two custodial interviews where Harris had confessed and had also implicated Williamson. Holding that the statements had been improperly admitted, the court vacated the judgment and remanded the case to the district court so that it could determine whether each of the statements in Harris’ confession were truly self-inculpatory. The court noted that custodial statements made by eo-defen-dants have typically been viewed with suspicion in light of the co-defendant’s “strong *1147 motivation to implicate the defendant and exonerate himself,” and that a “co-defendant’s statements about what the defendant said or did are less credible than ordinary-hearsay evidence.” Id. at 601, 114 S.Ct. at 2435 [quoting Lee v. Illinois, 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986)]. Therefore, the court determined:
The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant’s penal interest “that a reasonable person in the declar-ant’s position would not have made the statement unless believing it to be | ntrue,” and this question can only be answered in light of all the surrounding circumstances.
Id. at 604, 114 S.Ct. at 2437.
Relying on Williamson, the court in Coates, 661 So.2d at 581, held that Hall’s confession should not have been admitted in its entirety because, as a whole, it was not sufficiently against his penal interest to be reliable under La.Code Evid. art. 804(B)(3).
The instant situation is analogous to that in Williamson because Hall’s statements which inculpated Coates were made as part and parcel of his generally self-incul-patory confession. Hall clearly implicated himself in the kidnapping, but nonetheless attempted to tag Coates with the greater culpability. Hall’s motivation is plainly suspect as he, along with the others, was under arrest and charged with first degree murder when he gave the confession.
However, the court found that the error was harmless in light of the fact that Coates had confessed to the crime and Hall’s statement was basically cumulative regarding Coates’ involvement. The court noted that the defense had the opportunity to extensively cross-examine Stinson, the other party involved in the commission of the crime, about the extent of Coates’ involvement, and that the testimony was corroborated by forensic and physical evidence.
In the present case, Lewis implicated himself and the three other men in the homicide and stated in his confession that the defendant chose the victim as the target for the robbery and went into the store to buy beer and to “check out the scene.” He also stated that the defendant gave directions to the victim’s home but that he remained in the car during the actual kidnapping and robbery that occurred at the victim’s home.
_[is>However, regarding his role in the crime, the defendant told the police in his confession, “I didn’t have a part. I was just there.” Lewis stated that Hobley and Walker approached the victim while he was still in his car. Lewis walked up behind them with duct tape. They took the victim to the front of the car and asked him where the money was. Hobley told Lewis to keep the victim quiet, so Lewis punched Traylor. Eventually, Lewis ended up in the back- seat of the victim’s car with the victim, and Hobley was driving. Lewis stated that Walker left his gun in the back seat of the victim’s car and got into another car where the defendant was waiting. Walker and the defendant drove away. While Lewis and Hobley were driving away with the victim, the victim grabbed Hobby’s neck, Lewis dropped the gun on the floorboard on the passenger side, and Hobley shot the victim twice. However, in his confession, the defendant stated that Lewis had admitted shooting the victim.
We conclude that the trial court erred in allowing the State to play the entire audio tape of Lewis’ confession to the jury. As in Williamson, the trial court in the present case allowed Lewis’ entire statement to be introduced, rather than limiting the introduction to those portions that were self-ineul-patory only as to Lewis. Lewis’ statements regarding the defendant established that the defendant was an active participant in the robbery, information which conflicted with the defendant’s own statement. Unlike Coates, this error cannot be deemed harmless in the present case. In Coates, the court determined that the evidence regarding Coates contained in Hall’s statement was cumulative because it “relat[ed] much the same substance regarding the kidnapping as Coates’s own confession ... and Stinson’s testimony.” 661 So.2d at 581. Furthermore, defense counsel in Coates had an opportunity to cross-examine | ^Stinson regarding the extent of Coates’ involvement in the crime. The defendant in the present case did not have this opportunity as the other two participants did not testify.
*1148 As the trial judge did not evaluate each statement in Lewis’ confession to determine if they were truly self-inculpatory before the admission of the entire statement at the defendant’s trial, we reverse the defendant’s conviction, set aside his sentence, and remand this case to the district court for further proceedings. In the event the State elects to use this statement at any subsequent trial, the district court should determine which statements in Lewis’ confession were truly self-inculpatory before permitting them to be introduced.
CONCLUSION
There was sufficient evidence to convict the defendant of second degree murder.
Further, there was no Brady violation in this case because the evidence the defendant contends that the State should have revealed was not material evidence which would undermine confidence in the trial’s outcome.
However, the court erred in allowing the State to play Ricky Ray Lewis’ entire confession to the jury. This error is not harmless and we reverse the defendant’s conviction and remand for further proceedings. Furthermore, should the State seek to introduce the confession in any subsequent proceedings against the defendant in which Lewis is unavailable for purposes of La.Code Evid. art. 804(A)(3), the trial court must conduct an independent review to determine which of Ricky Ray Lewis’ statements l^are truly self-inculpatory before allowing them to be admitted into evidence against the defendant.
CONVICTION VACATED; REMANDED.